# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SCOTT D. LATOSKY,

       Plaintiff,

  v.                                    Case No. 08-C-771

JAMES R. STRUNC,

       Defendant.

---

### DECISION AND ORDER

---

Plaintiff Scott D. Latosky filed this 42 U.S.C. § 1983 action against Defendant James R. Strunc, claiming that Strunc acted jointly with City of Appleton police officers under color of state law to deprive Latosky of his rights under the United States Constitution by illegally removing him from his apartment. (Compl. ¶¶ 7, 9.) Latosky also claims that Strunc effected an illegal self-help eviction with the aid of police officers in violation of procedure set out in Chapter 799 of the Wisconsin Statutes. (Compl. ¶ 10.) Federal jurisdiction arises under 28 U.S.C. § 1331, as the § 1983 claim arises under federal law. Supplemental jurisdiction exists over the state law claim under 28 U.S.C. § 1367(a).

The case is presently before the Court on Latosky's motion for partial summary judgment on the state law claim and on Strunc's motion for partial summary judgment on the federal claim. Although the motions were originally scheduled for argument, the written briefs adequately set forth the issues. For the reasons that follow, the hearing previously set for oral argument will be removed from the calendar and both motions will be denied.

# SUMMARY JUDGMENT STANDARD

On motion of any party, a court must grant summary judgment if the evidence offered demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24. When assessing whether there are any factual issues to be tried, a court must view the facts in the light most favorable to the nonmoving party, and draw all reasonable inferences and resolve any ambiguities against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

# DISCUSSION

## A. State Law Self-Help Eviction Claim

Latosky argues he is entitled to summary judgment on his state law claim for wrongful eviction because there is no dispute that Strunc called police to have him forcibly removed from his apartment, even though Strunc had not complied with Wisconsin's statutory procedure for eviction of a tenant from a dwelling unit. Chapter 799 of the Wisconsin Statutes sets forth an orderly and expeditious procedure for removing a tenant who refuses to vacate his apartment upon the termination of his tenancy. *See* § 799.40 *et seq.* Self-help evictions are in violation of Wisconsin Consumer Protection regulations governing residential rental practices. The applicable regulation states: "No landlord may exclude, forcibly evict or constructively evict a tenant from a dwelling unit, other than by an eviction procedure specified under ch. 799, Stats." Wis. Adm. Code § ATCP

2

134.09(7).  Moreover, § ATCP 134.09(7) was adopted under the authority of Wis. Stat. § 100.20(2), which authorizes anyone who suffers a monetary loss as a result of a violation to sue for twice the loss plus costs and attorneys fees:

> Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

Wis. Stat. § 100.20(5).  Latosky contends that Strunc violated this section by having him forcibly evicted from his apartment above Strunc's bar on September 11, 2006.

In support of his version of the facts underlying his claim, Latosky has submitted a copy of the Appleton police report for the incident which his attorney declares to be a true and correct copy. (Decl. of T. Wickham Schmidt, Ex. A.)  According to the report, Sergeants Daul and Glasel of the Appleton Police Department proceeded to Uncle Jim's bar at approximately 8:40 a.m. on September 11, 2006, in response to a call from James R. Strunc, the owner.  Upon their arrival, Strunc reported Latosky was trespassing in an apartment above the bar and refused to leave. (*Id.* at 1.)  Strunc told police that he treated the apartments above his bar like a motel and leased them on a week-to-week basis.  Strunc stated that when a tenant does not pay he has to leave.  According to Strunc, Latosky's rent was three days overdue, and he had refused to leave.  Strunc asked Sergeants Daul and Glasel for assistance in removing Latosky from the apartment. (*Id.* at 3.)

Strunc then accompanied the officers to Latosky's apartment to unlock the door so they could go in and remove him.  When he could not get the door open with his key, Strunc told the officers to break the door down.  At that point, Latosky, who appeared intoxicated, opened the door slightly, but kept his foot against the back of the door so that the officers could not enter, stating that

3

they needed a warrant to do so. Sergeant Daul told Latosky they did not need a warrant because they had the consent of the owner. Latosky responded that the owner was not a judge and began citing sections of the Wisconsin Statutes on landlord/tenant law. Sergeant Daul continued to tell Latosky to move his foot so the officers could enter. When Latosky refused, Sergeant Daul finally pushed his foot aside and entered. (*Id.* 3-4.)

Latosky then retreated to his bed where he remained while the officers told him he needed to leave the room. When Latosky refused, he was threatened with a taser. Latosky continued to insist that the officers had entered his apartment unlawfully and that they needed an order of a judge in order to evict him. Sergeant Glasel explained to Latosky that he was on a week-to-week lease and could therefore be forced to leave at the request of the owner, who had requested just that. Sergeant Daul told Latosky that they had called for back-up and that if he did not leave by the time the back-up officer arrived, he would be tasered and forcibly removed. Sergeant Daul then asked Strunc to go downstairs so that he could direct the back-up officer upstairs when he arrived. (*Id.* at 4.)

Shortly thereafter, Sergeant Willis arrived and Sergeant Daul again told Latosky to leave. When Latosky refused, Sergeant Daul told him he was under arrest for criminal trespassing and placed his handcuff on his right wrist. The officers attempted to roll Latosky over on his stomach so they could handcuff him behind his back, but he continued to resist. The taser was then administered, but the probes did not penetrate Latosky's thick denim shorts. A second effort to administer the taser to his leg was successful, and he stopped struggling and was subdued. Latosky was then handcuffed, walked out of the apartment, and transported to St. Elizabeth hospital, where

4

he was examined for clearance to be admitted to jail. (*Id*. at 5.) After being cleared, he was booked into the Outagamie County Jail on charges of criminal trespass and resisting arrest. (*Id*. at 7.)

In his own sworn declaration, Latosky states that during the time he lived above Strunc's bar, he paid him $220 per month in rent, and that at no point had Strunc given him a notice to pay rent or vacate. (Decl. of Scott D. Latosky, ¶¶ 3, 5.) Latosky further states that he subsequently received a bill from St. Elizabeth Hospital for $285 for the examination performed on him after he was forcibly removed from his apartment and that he incurred attorney's fees and court costs of $212.65 in defense of the disorderly conduct and resisting an officer charges that were filed against him as a result of the incident, even though both charges were later dismissed. Upon his release from jail, Latosky was escorted back to his apartment by police and allowed to retrieve his personal belongings. Latosky contends that personal property having an approximate value of $6.00 was missing and has yet to be returned. (Latosky Decl. ¶¶ 8-10.) Based upon these facts, Latosky contends he is entitled to summary judgment on his claim for wrongful eviction against Strunc in the amount of $1,007.30 (2 x $285 + $212.65 + $6).

Strunc's response to Latosky's motion is less than clear. He does not directly address the facts proposed by Latosky concerning the incident that occurred on September 11, 2006. Instead, his response to Latosky's proposed findings of fact amounts to a challenge to the admissibility of the police report cited in support of the findings of fact proposed by Latosky, and his own assertion of extraneous facts that are mostly unresponsive to the facts proposed. An example of the latter is Strunc's response to Latosky's Proposed Finding of Fact No. 3. Latosky's Proposed Finding of Fact No. 3 reads: "On September 11, Latosky and Strunc had an argument. Strunc claimed that Latosky was three days late in paying his rent, and told him to get out of his apartment." Rather than simply

state whether the proposed fact is in dispute, and if so, cite to the place in the record that shows a

dispute exists, Strunc offers the following lengthy response:

> Strunc told Latosky to leave his bar and eventually called the police because Latosky
> was belligerent and intoxicated in Strunc's building. (DPFOF ¶¶ 8, 14; Davis Aff.
> Ex. A, pp. 17-18, 23, 29, 45-47). After drinking the night before, on the morning
> of September 11, 2006, Latosky awoke in his rented room above defendant's bar
> around 7:00 a.m. and immediately "cracked open" a beer and began drinking
> heavily. (DPFOF ¶¶ 1-2; Davis Aff. Ex. B, pp. 78, 84-85). Latosky left his room
> with a can of beer in his hand and went down to the bar sometime between 8:00 a.m.
> and 9:00 a.m. (DPFOF ¶ 3; Davis Aff. Ex. B, pp. 86-87). He approached Strunc in
> the bar and began arguing with Strunc regarding overdue rent. (DPFOF ¶ 3; Davis
> Aff. Ex. B, p. 87). Strunc testified that Latosky was belligerent and intoxicated as
> soon as he walked into the bar. (DPFOF ¶ 4; Davis Aff. Ex. A, p. 16). Latosky
> slammed his hand down on the bar and told Strunc that he was going to have to wait
> for his overdue rent. (DPFOF ¶ 5; Davis Aff. Ex. A, p. 17). Strunc questioned him
> on this issue and Latosky responded by giving Strunc the finger and telling Strunc
> to "go fuck yourself". (DPFOF ¶ 6; Davis Aff. Ex. A, pp. 17, 45-47). Strunc told
> him to leave the bar or he would call the police. (DPFOF ¶ 7; Davis Aff. Ex. A, p.
> 17). Latosky would not leave the bar and he became more belligerent by calling
> Strunc names and swearing at him so Strunc called the police while Latosky was still
> in the bar. (DPFOF ¶ 8; Davis Aff. Ex. A, pp. 17-18). In response to Strunc calling
> the police, Latosky said he was going to laugh in the police officer's face. (DPFOF
> ¶ 9; Davis Aff. Ex. B, p. 90). Strunc called the police because Latosky was
> belligerent and intoxicated in his bar. (DPFOF ¶¶ 14-15; Davis Aff., Ex. A, pp. 23,
> 29, 45-47). Latosky was eventually arrested and charged with disorderly conduct
> and resisting arrest because he was belligerent and intoxicated in defendant's
> building. (DPFOF ¶ 30; Davis Aff. Ex. A, pp. 23, 29, 45-47).

(Def.'s Response to PPFOF ¶ 3.) Even after taking the time to read Strunc's response, one is still

left without knowing for certain whether the simple statement of fact proposed by the plaintiff is

disputed or not. Instead, we are given a whole panoply of extraneous facts apparently offered for

no other reason than to embarrass the plaintiff or mislead the Court. This is not the only proposed

fact that counsel for Strunc responded to in this fashion. His responses to the eleven succinct

proposed findings of fact set forth on a page-and-a-half by the plaintiff cover nine pages, and then

6

continue with his own proposed findings of fact which are in large part a repetition of the same irrelevant matter offered in his responses.

The practice of filing these kind of responses to proposed findings of fact offered in support of motions for summary judgment is a clear violation of the local rule which requires "[a] specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists." Civil L.R. 56.2(b)(1). If additional facts are deemed relevant to the motion, the rule allows the opposing party to present them in the form of additional proposed facts. Civil L.R. 56.2(b)(2). Responding to proposed findings of fact with legal argument or extraneous facts is particularly disturbing because it increases the amount of time needed to address such motions and detracts from a clear presentation of the issues at stake. Counsel for Strunc is hereby warned that similar violations of the local rules in the future may result in striking the entire response as a sanction.

Strunc's objection to the admissibility of the police report of the incident has greater merit. Affidavits offered in support of motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). A declaration, if made properly, is admissible in federal court and has the same effect as an affidavit. 28 U.S.C. § 1746. Sworn testimony in the form of an affidavit or declaration is not the only basis on which summary judgment may be granted, however; a court may consider any material that would be admissible or usable at trial provided the material is properly authenticated and admissible exhibits or documents. *Aguilera v. Cook County Police & Corrs. Merit Bd.*, 760 F.2d 844, 849 (7th Cir.1985). Latosky

7

argues that the police report attached to his attorney's declaration is admissible under Fed. R. Evid. 803(6) as a business record.

The business records exception to the hearsay rule set forth in Fed. R. Evid. 803(6) has been found applicable to police reports. *Chrysler v. City of West Covina*, 1998 WL 845795, *2 (9th Cir. Dec. 4, 1998) ("Entries in a police report that result from the officer's own observations and knowledge may be admitted under the business records exception, 'unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.'") (unpublished opinion). A police report may be admissible as a business record if it has sufficient indicia of trustworthiness to be considered reliable. At the summary judgment stage, this normally requires "the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000). Latosky's attorney is not such a witness. He is not a custodian of the report and has no personal knowledge of the incident reported by the police officer. If this were all Latosky had to offer, the report would not be admissible, at least at this stage of the proceeding. But Latosky has also submitted the Appleton Police Department's audio/video recording of the incident which depicts the very actions described in the written report.

Strunc contends that the audio/video recording of the incident is inadmissible for the same reason that the written police report is not admissible, and therefore may not be considered by the Court in determining the pending motions for summary judgment. But in a supplemental declaration, Latosky identifies his voice, as well as those of Stunc and the officers who entered his room and forcibly removed him at Strunc's request. In addition, a declaration submitted by his

attorney states that the recording was produced in response to a subpoena directed to the Appleton Police Department specifically requesting recordings and records of the incident. These declarations, along with the scenes depicted in the recording itself, are more than enough to authenticate the recording, as well as the written police report. *See* Fed. R. Evid. 901(b)(4), (5). I therefore conclude that the police report (Decl. of T. Wickham Schmidt, Ex. A) and the recording (Third Schmidt Decl., Ex. A) are admissible for purposes of determining the motion before me.

This does not mean, however, that there are no material facts in dispute. For despite the unequivocal written report of Sergeant Daul that he and Sergeant Glasel were dispatched to the Strunc's bar in response to Strunc's complaint that Latosky was refusing to leave the upstairs apartment after Strunc had ordered him to do so; that upon their arrival, Strunc told them that Latosky was three days late in his rent and refused to leave; that Strunc requested the officers' assistance in removing Latosky; that Strunc accompanied the officers to the apartment so he could open the door with his key; and that when his key would not work, Strunc told the officers to break the door down (Schmidt Decl., Ex. A at 2), all of which finds strong support in the audio/video recording of the incident (Third Schmidt Decl., Ex. A), despite all this, Strunc denied in his own deposition that he had asked the police to remove Latosky from his room. (Aff. of Zachary Davis, Ex. A at 19.) Strunc's denial that he had asked police to remove Latosky creates a dispute of fact that cannot be resolved on summary judgment. A jury may conclude, after all, that Strunc is telling the truth, that Sergeant Daul is lying, and the recording is a fabrication. But if that is not the case, Strunc may wish to consider revising his testimony and amending his response to Latosky's motion. The penalty for perjury is severe. *See* 18 U.S.C. § 1621. Counsel may also wish to review Federal Rule of Civil Procedure 11(c). In any event, the presence of this factual dispute precludes summary

judgment on Latosky's state law claim that Strunc forcibly evicted him in violation of Wis. Adm. Code § ATCP 134.09(7).

Strunc also presents several legal arguments in opposition to Latosky's state law claim, but they are without merit. He contends, for example, that because Latosky was a "periodic tenant" within the meaning of Wisconsin's Landlord/Tenant Code, *see* Wis. Stat. § 704.01(2), the parties could eliminate the requirement of notice and terminate the tenancy in some other manner by express agreement. Wis. Stat. § 704.19(2)1. Strunc argues from Latosky's testimony characterizing the rental agreement as "open-ended" that they had agreed that either could terminate the tenancy without notice. (Def.'s Br. Opp. Mot. Partial S.J. at 14.) Alternatively, he contends that because rent was payable daily, one day notice was sufficient. *See* Wis. Stat. § 704.19(3) (If rent is payable on a basis less than monthly, notice at least equal to the rent-paying period is sufficient."). Because he may indeed have provided Latosky written notice at some point over the seven-to-nine-day period over which his rent was unpaid, Strunc contends that a factual issue exists as to whether proper notice to terminate the tenancy was given. (*Id.*)

Whether or not Strunc gave Latosky proper notice, however, is irrelevant. Proper notice is a prerequisite to terminating the tenancy, but it does not allow the landlord to forcibly evict a tenant who illegally remains. "If a tenant remains in possession without consent of the tenant's landlord after termination of the tenant's tenancy, the landlord may in every case proceed in any manner permitted by law to remove the tenant and recover damages for such holding over." Wis. Stat. § 704.23. The only manner of removing a tenant who refuses to leave after termination of the tenancy permitted under Wisconsin law, however, appears to be an action for eviction. Section ATCP 134.09(7) of the Wisconsin Administrative Code explicitly prohibits landlords from

10

excluding, or forcibly or constructively evicting a tenant from a dwelling unit, "other than by an eviction procedure specified under ch. 799, Stats." *But see Shefelker v. First Nat. Bank*, 250 N.W. 870, 872 (Wis. 1933) ("Peaceable entry in the absence of the tenant and putting his goods out of doors after lawful termination of a tenancy by notice is lawful."). Since Strunc is alleged to have, through the police, forcibly evicted Latosky from his apartment without any judgment or order issued by a court, the issue of whether he gave proper notice is irrelevant.

It is, of course, relevant whether Latosky suffered any pecuniary loss as a result of his eviction, and it is his burden to prove such loss or losses. Latosky claims three items of pecuniary loss: $6.00 worth of beer, a $285 hospital bill, and $212.65 in attorneys fees for defense of the disorderly conduct and resisting arrest charges that were issued when he resisted his forcible removal. Although it seems clear that each of these losses resulted from Latosky's forcible eviction, Strunc argues that the only evidence supporting Latosky's claim that he lost $6.00 worth of beer and that the hospital bill he produced was related to his eviction is Latosky's own word. Since, in Strunc's view, Latosky has little credibility, a factual dispute exists as to these issues as well. Likewise, as to Latosky's claim for attorneys fees incurred in defense of the disorderly conduct and resisting arrest, Strunc questions the credibility of Latosky's statement that the charges were dismissed. Strunc contends that those charges were issued because Latosky was belligerent and intoxicated and that they were independent of any alleged "self-help eviction." (Def.'s Br. Opp. Partial S.J. at 11.) Thus, he argues that Latosky has failed to establish any pecuniary loss.

Strunc is certainly free to challenge Latosky's credibility and, in so doing, place in dispute the issue of whether he sustained any pecuniary loss as a result of the alleged self-help eviction. It should be noted, however, that Sergeant Daul's report corroborates Latosky's claim that he was

11

taken to St. Elizabeth Hospital for medical clearance before being transported to the Outagamie County Jail.  It should also be noted that in order to commit the crime of resisting arrest, there must be a showing that the police were acting with lawful authority.  Wis. Stat. 946.41(1).  It seems unlikely that a police officer who assisted a landlord in an illegal self-help forcible eviction would be found to be acting with lawful authority.  Moreover, disorderly conduct requires proof that the actor engage in "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance."  Wis. Stat. § 947.01.  No such conduct is depicted on the recording of the incident.  Instead, it appears that Latosky simply resisted what appears to have been an unlawful entry of his apartment while attempting to explain to the officers that Strunc needed a court order to have him removed.  Since it seems unlikely that the criminal charges would have been issued or a hospital charge incurred absent the alleged self-help eviction, Latosky's claim that they constitute pecuniary damages resulting from the allegedly illegal eviction is not without merit.  But these issues, too, must await a more complete record.  Accordingly, Latosky's motion for summary judgment on his state law claim for wrongful eviction will be denied.

## B.  Section 1983 Claim

To prevail on a claim under § 1983, a plaintiff must prove (1) he was deprived of a federal right (2) by a person acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).  In his own motion for summary judgment seeking dismissal of Latosky's section 1983 claim, Strunc argues that on the undisputed facts of the case Latosky is unable to establish either element of the claim.  Strunc contends that Latosky cannot

12

establish the violation of a federal right, but that even if he could, Latosky cannot show that Strunc was acting under color of state law because he is a private citizen. Neither argument has merit.

### 1. Deprivation of federal right

The question of whether a law-enforcement-assisted self-help eviction can constitute a deprivation of federal rights was conclusively decided in *Soldal v. Cook County*. 506 U.S. 56 (1992). In that case Edward Soldal and his family, along with their mobile home, were forcibly evicted from the mobile home park where they resided for nonpayment of rent in violation of Illinois law. Although the owner of the park had started an eviction action in state court, the manager of the park elected instead to forcibly remove the Soldals two weeks before the scheduled hearing in the matter. *Id.* at 58. To forestall any possible resistance, the manager notified the sheriff's department and requested the presence of deputies. Then, accompanied by a deputy sheriff, two employees of the park proceeded to the home, wrenched the sewer and water connections off the side of the home, disconnected the phone, tore off the trailer's canopy and skirting, and hooked the home to a tractor. The deputy sheriff, who was joined by two other deputies, explained to Soldal that they were there to see that he did not interfere with the employees' work. Over the objection of Soldal, who advised the deputy sheriffs that he wished to file a complaint for criminal trespass, the park employees pulled the trailer free of its moorings and towed it onto the street. *Id.* at 58-59.

After the state judge assigned the eviction action ruled that the self-help eviction was unauthorized and ordered the park owner to return the home to the lot, the Soldals brought an action under 42 U.S.C. § 1983, alleging a violation of rights under the Fourth and Fourteenth Amendments. They claimed that the park owner, its manager, and the sheriff deputies had conspired together to unreasonably seize and remove their trailer home. The district court granted

13

the defendants' motion for summary judgment on the grounds that the Soldals had failed to adduce any evidence to support their conspiracy theory and thus the existence of the state action essential to their claim. The Seventh Circuit affirmed. Construing the facts in favor of the Soldals, the Court accepted their contention that there was state action. The Court went on to hold, however, that the removal of the Soldals' trailer did not constitute a seizure for purposes of the Fourth Amendment or a deprivation of due process for purposes of the Fourteenth. On rehearing, a majority of the Court, sitting en banc, reaffirmed the panel decision. *Id.* at 59-60. The Supreme Court granted certiorari and reversed.

In reversing the Seventh Circuit's holding that no constitutional deprivation had occurred, the Supreme Court noted that the Fourth Amendment provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." *Id.* at 61 (quoting U.S. Const. amend. IV). The Court also observed that it had previously explained that a "seizure" of property "occurs when 'there is some meaningful interference with an individual's possessory interests in the property'" *id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)), and that "'at the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home.'" *Id.* (quoting *Silverman v. United States*, 365 U.S. 170, 178-79 (1961)). Observing that "[a]s a result of the state action in this case, the Soldals' domicile was not only seized, it literally was carried away, giving new meaning to the term "mobile home," the Court concluded, "[w]e fail to see how being unceremoniously dispossessed of one's home in the manner alleged to have occurred here can be viewed as anything but a seizure invoking the protection of the Fourth Amendment." *Id.*

14

It follows from the foregoing that the conduct alleged by Latosky constitutes a seizure of property within the meaning of the Fourth Amendment and thus a deprivation of federal rights. Latosky has alleged that despite his possessory interest in his apartment, Strunc enlisted the aid of Appleton police to forcibly and unlawfully remove him. It is difficult to see "how being unceremoniously dispossessed of one's home in the manner alleged to have occurred here can be viewed as anything but a seizure invoking the protection of the Fourth Amendment." *Soldal*, 506 U.S. at 61. Strunc's argument that Latosky cannot establish the violation of a federal right therefore fails.

### 2. Under color of state law

Strunc's primary argument is that Latosky cannot show that he was acting under color of state law at the time Latosky was removed from his apartment. Section 1983 is intended to provide a federal remedy against governmental actors who use their authority under state law to deprive individuals of federal rights. *Monroe v. Pape*, 365 U.S. 167, 184 (1961). Strunc, of course, is not an employee of the state or local government, and thus by himself is incapable of acting under color of state law. But a private party may be liable under section 1983 if he conspires or acts in concert with a state actor to deprive an individual of constitutional rights.

> [A] private party involved in such a conspiracy, even though not an official of the State, can be liable under s 1983. Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (internal citations omitted); *see also Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 941 (1982) ("[W]e have consistently held that a private

15

party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."). Latosky alleges here that Strunc conspired and acted jointly with the police to deprive him of his rights under the Fourth Amendment.

Strunc, on the other hand, argues that he played the role of a concerned citizen and after reporting a crime, i.e., Latosky's belligerent behavior and refusal to leave his bar, simply stood by and let the police do their job. He cites *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986), for the proposition that a citizen who accuses another person of a crime does not conspire with police who then arrest the other person, even if it later turns out that the accusation was in error. *Gramenos* held that "shopkeepers are engaged in 'state action' when they strike a deal with the police under which the police simply carry out the shopkeepers' directions. If the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function and is treated as if he were the state." 797 F.2d at 435. Because there is no evidence he had such a relationship with the police in this case, Strunc argues that Latosky is unable to prove he acted under color of state law and his section 1983 claim should therefore be dismissed.

As already noted, however, the evidence suggests that Strunc was far more than a concerned citizen reporting the disorderly conduct of one of the patrons of his bar. To the contrary, the evidence suggests that Strunc enlisted the Appleton police to assist him in the forcible eviction of his tenant in violation of Wisconsin law. According to Sergeant Daul's report and the audio/video recording of the incident, Strunc told police Latosky had not paid his rent and was trespassing in his own apartment. Strunc requested that the police remove Latosky and accompanied them to the door of the apartment in order to unlock it. When his key would not work, Strunc gave the officers

16

permission to break the door down. (Schmidt Decl., Ex. A; Third Schmidt Decl., Ex. A.) In response to Strunc's request, the Appleton police officers forcibly entered Latosky's apartment without his consent, stunned him with a taser, and handcuffed and forcibly removed him. These facts are more than sufficient to support an inference that Strunc and the police acted in concert to deprive Latosky of possession of his apartment. *See Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983) (holding that action taken by landlord was 'under color of state law' for purposes of tenants' section 1983 action where, in evicting tenants, landlords were accompanied by police officer who later privately approached tenants and recommended that they leave, thereby creating appearance that police sanctioned eviction); *see also Soldal v. Cook County*, 942 F.2d 1073, 1075 (7th Cir. 1991) (en banc) (holding that conspiracy between employees and police would be implied and that action of employees of private trailer park in disconnecting mobile home from utilities in sewer and towing it off premises while sheriff deputies stood by to preclude owners from violently opposing eviction was state action for purposes of bringing § 1983 claim), *rev'd on other grounds*, 506 U.S. 56.

Unlike *Gramenos*, this is not a case in which a citizen witness fed police false information, whether intentionally or not, which the police then acted upon in carrying out their independent duties. If the allegations here are true, Appleton police officers acted at Strunc's request to forcibly remove Latosky from his apartment even though they knew at the time Strunc had no judgment or order of eviction. Under Wisconsin law, the officers had no authority to enter Latosky's apartment and forcibly remove him. If, as the evidence strongly suggests, they were acting at Strunc's request, state action will be found as a matter of law. *See Greco v. Guss*, 775 F.2d 161, 168 (7th Cir. 1985) ("[A] private party acting jointly with a state official who abuses his authority also acts under color

17

of state law and is subject to section 1983 liability."). It thus follows that Strunc is not entitled to summary judgment on Latosky's section 1983 claim.

## CONCLUSION

Accordingly and for the reasons set forth above, both motions seeking partial summary judgment are denied. The clerk is directed to remove the hearing date previously set for oral argument from the calendar and set this matter for a Rule 16 telephone conference for further scheduling.

**SO ORDERED** this  20th  day of April, 2009.


s/ William C. Griesbach
William C. Griesbach
United States District Judge

Case 1:08-cv-00771-WCG   Filed 04/21/09   Page 18 of 18   Document 37